**IN THE COURT OF APPEALS OF IOWA**

No. 20-1137
Filed November 4, 2020

**IN THE INTEREST OF Z.M. and K.T.,**
**Minor Children,**

**K.B., Mother,**
        Appellant,

**A.M., Father of Z.M.,**
        Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka,

Associate Juvenile Judge.

        A mother and a father separately appeal the termination of their parental

rights.  **AFFIRMED ON BOTH APPEALS.**

        Matthew W. Boleyn of Reynolds & Kenline, L.L.P., Dubuque, for appellant

mother.

        Dustin Baker of Henkels & Baker, Dubuque, for appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Daniel A. Dlouhy of Dlouhy Law, P.C., East Dubuque, Illinois, attorney and

guardian ad litem for minor children.

        Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**DOYLE, Presiding Judge.**

The mother of Z.M. and K.T. and the father of Z.M. separately appeal the termination of their parental rights. We review each parent's claims de novo. *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). For the reasons that follow, we affirm the termination of each parent's parental rights.

**I. Father's Appeal.**

The juvenile court terminated the father's parental rights to Z.M. under Iowa Code section 232.116(1)(e) and (h) (2020). We may affirm the termination order if the record supports termination on one of those grounds. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Because the father only challenges termination under section 232.116(1)(h), the father has waived any argument regarding termination under section 232.116(1)(e). We may affirm termination of the father's parental rights on that ground.

The father also contends termination is contrary to Z.M.'s best interests. He argues that his "brief lapse in participation" in services occurred for reasons outside his control—namely, the COVID-19 pandemic.[1] But the record shows the father's involvement with the child was limited before then. Z.M. resided outside the father's care for six months before the juvenile court removed the child from his

---

[1] As explained in *In re A.H.*, ___ N.W.2d ___, ___, 2020 WL 4201762, at *3 n.6 (Iowa Ct. App. 2020),

> [t]he novel coronavirus/COVID-19 is an ongoing international pandemic. To stem the spread, governments, including the state of Iowa, implemented emergency safeguards recommended by such agencies as the Center for Disease Control, which included social distancing and wearing of face masks. In Iowa, many businesses were ordered closed, people were encouraged to maintain six-foot distances between one another, and gatherings of ten or more people were discouraged.

custody in November 2019. After removal, the father participated in supervised visitation for about one month. His last visit with the child was on January 22, 2020, approximately two months before the implementation of precautions aimed at slowing the spread of the virus. The father told others that he was "done" with services and to let Z.M.'s caretaker adopt him. Then in June, two months before the termination hearing, the father contacted the Iowa Department of Human Services (DHS) about reengaging in visits with the child. By that time, Z.M. did not know the father at all. As the DHS worker testified, the father "was absent the entire time of COVID. [The DHS] started doing face-to-face visits again beginning in June, so he wasn't affected by the COVID at all because we were back to face-to-face visits with him."

Once the grounds for termination of parental rights have been established, the court must then "apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights." *In re D.W.*, 791 N.W.2d 703, 706-07 (Iowa 2010). In determining best interests, our primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code § 232.116(2)). The "defining elements" we consider in making this determination are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

Termination is in Z.M.'s best interests. The father chose not to participate in services during the child-in-need-of-assistance proceedings. As a result, he

cannot provide Z.M. with a safe and permanent home. The father's voluntary absence from Z.M.'s life has rendered him a stranger to Z.M. In contrast, Z.M. is strongly bonded with his caretaker in his current placement, where he is afforded the safety and stability he needs. Termination will allow the caretaker to adopt both children, which the guardian ad litem supported and agreed would be in the Z.M.'s best interests. Because preserving the parent-child relationship only works to the father's benefit (and Z.M.'s detriment), we affirm the termination of the father's parental rights.

**II. Mother's Appeal.**

The mother of both children does not dispute the grounds for termination of her parental rights but contends the juvenile court abused its discretion by denying her request for an extension of time.[2] Iowa Code section 232.104(2)(b) allows the court to continue the child's placement for another six months if doing so will eliminate the need for the child's removal. The juvenile court noted that the parents were essentially granted an extension of time when the May permanency hearing was rescheduled to August. The juvenile court observed,

> During this additional time, the parents did little, if anything, to demonstrate they can provide a safe and stable home to the children. As such, the court finds that any claim by the parent's that COVID restrictions were a barrier to reunification to be without merit. Alternative options to services and interactions were offered and simply not pursued by the parents.

---

[2] The mother cites to Iowa Rule of Civil Procedure 1.911(1), which allows the court to continue proceedings "for any cause not growing out of the fault or negligence of the movant." The State notes that the mother never moved to continue the termination hearing but instead sought an extension of time under Iowa Code section 232.104(2)(b). We address her argument as one regarding the denial of an extension.

We concur with the juvenile court's finding that there is little evidence an extension of time would eliminate the need for the children's removal. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) ("[W]e look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future."). An extension of time is unwarranted.

The mother also seeks to avoid termination under Iowa Code section 232.116(3), which provides that the court "need not terminate the relationship between the parent and child" under certain circumstances. Application of section 232.116(3) is permissive rather than mandatory, and it depends on the facts of each case and the children's best interests. *See A.S.*, 906 N.W.2d at 475. The mother bears the burden of establishing an exception to termination. *See id.* at 476.

The mother claims that termination would be detrimental to the children. *See* Iowa Code § 232.116(3)(c) (providing that the court need not terminate parental rights if "clear and convincing evidence" shows "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). She argues that she "has a good relationship with her children" and "there is not a question as to whether or not [she] loves both of her boys." But this falls far short of clear and convincing evidence that terminating the mother's parental rights would be detrimental to the children. Rather, the record shows that any bond the children have with the mother is limited considering the children's young age and the amount of time they have spent out of her care. What limited parent-child bond exists is outweighed by the bond the children have formed with

their caretaker, who can provide for the children's best interests.  We affirm the termination of the mother's parental rights to Z.M. and K.T.

**AFFIRMED ON BOTH APPEALS.**